FILED
CLERK
11/9/2022 12:42 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,   . Criminal No. 22-CR-00347-JMA-SIL
                            .
           Vs.              .
                            . 100 Federal Plaza
                            . Central Islip, NY  11722
PATRICK POLIDORE            .
                            . September 28, 2022
. . . . . . . . . . . . . . .

TRANSCRIPT OF PLEA
BEFORE HONORABLE STEVEN I. LOCKE
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:     UNITED STATES ATTORNEYS OFFICE
                        EASTERN DISTRICT OF NEW YORK
                        BY: ANTHONY BAGUOLA, ESQ.
                        271 Cadman Plaza East
                        Brooklyn, NY  11201

For the Defendant:      FEDERAL DEFENDERS OF NEW YORK, INC.
                        BY: TRACEY GAFFEY, ESQ.
                        770 Federal Plaza
                        Central Islip, NY  11722

Proceedings recorded by electronic sound recording, transcript produced by transcription service.
_____

**TRACY GRIBBEN TRANSCRIPTION, LLC**
**PO BOX 688**
**Middletown, NJ 07748**
**(732) 263-0044    Fax No. 732-865-7179**
**(800) 603-6212**
**www.tgribbentranscription.com**

I N D E X

ORAL ARGUMENT (BAIL)                                        PAGE

BY MR. BAGUOLA                                               6

BY MS. GAFFEY                                                7


DECISION                                                    12

1  THE CLERK: Calling case 22-CR-0347, United States of
2 America versus Patrick Polidore. Counsel, please state your
3 appearance for the record.
4  MR. BAGUOLA: Good afternoon, Your Honor, Anthony
5 Baguola for the Government.
6  THE COURT: Good afternoon.
7  MS. GAFFEY: And good afternoon, Your Honor, Tracy
8 Gaffey, Federal Defenders for Patrick Polidore.
9  THE COURT: Good afternoon. Please be seated. Ms.
10 Gaffey, your client is with you?
11  MS. GAFFEY: Yes, he is, Your Honor.
12  THE COURT: Okay. Mr. Baguola, when you walked in
13 earlier, that was just me saying hi. Ms. Gaffey, he was early
14 so I said hi, full disclosure. Okay, anyway let's get started.
15 Sir, the purpose of this proceeding is to make sure that you
16 understand what crimes you are charged with, to make sure that
17 you understand you have the right to be represented by an
18 attorney and to address the question of whether you should be
19 released on bail or held in jail.
20  You are not required to make a statement. If you
21 started to make a statement you can stop at any time. If
22 you've made a statement, you need not make any further
23 statement. Any statement you do make, however, other than to
24 your attorney can be used against you. Do you understand?
25 Yes, sir.

1  THE COURT: All right. The Court has appointed Ms.
2  Gaffey to represent you and act as your attorney in connection
3  with today's proceedings and all proceedings related to the
4  charges. Do you understand?
5  MR. POLIDORE: Yes, sir.
6  THE COURT: Do you also understand that you have the
7  right to retain counsel on your own if you choose to do so?
8  MR. POLIDORE: Yes, sir.
9  THE COURT: You're here today because a Grand Jury
10 has returned an indictment charging you with multiple counts,
11 count one, conspiracy to deal in firearms, count two,
12 conspiracy to make false statements to acquire firearms and
13 counts three through 11, all of which are individual counts for
14 making false statements to acquire firearms. Have you seen the
15 indictment, sir?
16 MR. POLIDORE: Yes.
17 THE COURT: Have you had a chance to review it with
18 your lawyer?
19 MR. POLIDORE: Yes.
20 THE COURT: Do you understand the nature of the
21 charges?
22 MR. POLIDORE: Yes.
23 THE COURT: Ms. Gaffey was able to answer any
24 questions you had?
25 MR. POLIDORE: Yes.

```
 1              THE COURT:  Okay.  Ms. Gaffey, have you reviewed the
 2  indictment with your client?
 3              MS. GAFFEY:  Yes.
 4              THE COURT:  Do you believe he understands the nature
 5  of the charges?
 6              MS. GAFFEY:  I do.
 7              THE COURT:  Did you explain to him his constitutional
 8  rights?
 9              MS. GAFFEY:  I did.
10              THE COURT:  Do you believe he understands those
11  rights?
12              MS. GAFFEY:  Yes, I do.
13              THE COURT:  Do you wish to have the individual read
14  aloud?
15              MS. GAFFEY:  No, we'll waive the public reading, Your
16  Honor.
17              THE COURT:  Okay.  Is your client prepared to plead
18  to each of the 11 charges?
19              MS. GAFFEY:  Yes, Your Honor, my client is prepared
20  to enter pleas of not guilty to all of the charges.
21              THE COURT:  To all charges, okay, very good.  Your
22  client is a citizen, Ms. Gaffey?
23              MS. GAFFEY:  Yes, he is.
24              THE COURT:  Okay.  Mr. Baguola, what is the
25  Government's position with respect to bail?  I believe this
```

1  defendant has been bailed in Georgia already, is that right?
2  MR. BAGUOLA: Yes, Your Honor. Ultimately, I think
3  that fact is going to be material here but I do want to advise
4  the Court with respect to certain facts that are not apparent
5  from the face of the indictment. The pretrial services report
6  speaks for itself in terms of the defendant's history. I think
7  there are a few red flags in the pretrial services report
8  concerning prior occasions of nonappearance and bail revocation
9  from Mr. Polidore.
10  But far more to the point is the community safety
11  issue that this case poses. Between October 2020 and January
12  '21 which is the date charged in the indictment, Mr. Polidore
13  is alleged to have acted as the straw purchaser for 27 handguns
14  in the State of Georgia, which were then trafficked by his co-
15  defendant into the Eastern District of New York.
16  At least 11 of those handguns have since been
17  recovered at crime scenes in this community including a January
18  2021 incident where a juvenile was in possession with one of
19  the guns Mr. Polidore bought, a May 2021 incident where a
20  second individual was in possession of a 22 caliber handgun
21  that Mr. Polidore bought here in Patchogue and then an October
22  2021 incident where an individual fleeing the scene of an armed
23  robbery was found in possession of one of the handguns Mr.
24  Polidore purchased.
25  In fact, in December of 2020, a gun box that had

purchased along with one of the 40 caliber handguns Mr. Polidore bought in Georgia was found at the scene of a homicide in Hempstead. And so the community safety concerns here are self evident and ordinarily given the severity of the charges, the Government would not be seeking anything short of detention.

However, as the Court noted Mr. Polidore was arraigned or removed rather in the Northern District of Georgia a month ago and there is a judicial determination in place to have released him and obviously Mr. Polidore has been compliant insofar as he is here on his own accord today in court. And so being unaware of any facts to overturn the judicial determination in Georgia, I will not be requesting detention at this time but I do think it's important for the Court and the defense and Mr. Polidore to know about the Government's public safety concerns in this case.

THE COURT: Okay. Ms. Gaffey?

MS. GAFFEY: Yes, Your Honor, we do not have any objection to the release conditions that are suggested by pretrial services in their supplement to the Georgia pretrial service report. They appear to mirror that report except in two respects, which I would like to address and perhaps ask Your Honor to tweak a bit. I've spoken to Mr. Polidore as to condition number nine, which is random drug testing evaluation. He indicated to me that he does not use drugs and he doesn't

1  have a drug history.

2  I would ask that an evaluation be done and I'm sure
3  pretrial can take it from there. So I would ask for that tweak
4  instead of random testing, evaluation first. And the other
5  tweak that I would ask for is to eliminate the home curfew.
6  Mr. Polidore is on electronic monitoring and has been on
7  electronic monitoring from Georgia. I'm not sure what home
8  curfew adds to that with location monitoring and also Mr.
9  Polidore informed me that Georgia pretrial knows this as well,
10 that he works the overnight shift at the bakery which is 10:30
11 p.m. to seven a.m. plus overtime.

12  THE COURT: Okay, if he's permitted to be at the
13 bakery during that shift, then isn't that sufficient as opposed
14 to removing a curfew I guess because that would be an exception
15 to the curfew anyway?

16  MS. GAFFEY: I think it would be but I tend to look
17 at these things in the other direction. Is a curfew necessary?

18  THE COURT: Well, I certainly appreciate that but I
19 will tell you candidly, these could not be more severe charges
20 in my mind, even without Mr. Baguola's description. And this
21 well could have come out another way, had it come to this court
22 in the first instance. So while I appreciate the request with
23 respect to the drugs, Mr. Baguola, is there any objection to
24 Ms. Gaffey's request for an evaluation if this defendant has no
25 history of drug use or abuse?

1   MR. BAGUOLA: No objection to the evaluation, Your
2 Honor, but I would point out that the pretrial services report
3 includes a December 2020 arrest in Marietta, Georgia for among
4 other things, purchase, possession, manufacture or sale of
5 marijuana, a felony offense. So although I am not aware of any
6 facts at this time, that would suggest Mr. Polidore is
7 currently using drugs, I would push back respectfully on the
8 idea that he has no history of drug use or possession.
9   THE COURT: Okay. What about that, Ms. Gaffey?
10  MS. GAFFEY: Well, I wasn't looking at that charge.
11 I see that it's pending so we don't know the outcome of that.
12 But I would reiterated I've spoken to Mr. Polidore. He
13 indicates he doesn't have a drug use history so.
14  THE COURT: Okay.
15  MS. CAROL: Excuse me, Your Honor?
16  THE COURT: Yes.
17  MS. CAROL: This is Fran Carol (phonetic) from the --
18  THE COURT: Okay, you need to be on a microphone.
19 Before you get started, Mr. Baguola, is there any objection to
20 this defendant going to work the overnight shift?
21  MR. BAGUOLA: No, I would defer to pretrial in terms
22 of enforcing location monitoring --
23  THE COURT: That was with respect to, but okay.
24  MR. BAGUOLA: No.
25  MS. CAROL: HI, Your Honor, this is Fran Carol from

1 pretrial services. So regarding the drug testing?
2 THE COURT: Yes.
3 MS. CAROL: We typically would drug test an
4 individual and if they have a pattern of testing positive, or
5 we deem it necessary, we would send them for an evaluation and
6 for treatment.
7 THE COURT: Okay.
8 MS. CAROL: Typically, it doesn't happen in the
9 reverse.
10 THE COURT: Okay.
11 MS. CAROL: So I would still request that the drug
12 texting evaluation and treatment as deemed by pretrial services
13 is added to the bond.
14 THE COURT: Okay.
15 MS. CAROL: In regards to the curfew, since he does
16 work overnight, we would adjust the curfew so it would be
17 during the day and then he would be allowed out for work at
18 night with verifications.
19 THE COURT: Okay. Ms. Gaffey -- why don't you stay
20 there? You want to be heard about that?
21 MS. GAFFEY: I don't, the only thing that I would
22 want to be heard about is to just make sure that, because I
23 don't know the logistics of it, if there's a day curfew that he
24 still is able to do all those functions that people need to do
25 like laundry, grocery shopping, et cetera.

1 MS. CAROL: So no, if his curfew is during the day,
2 he wouldn't be allowed out during the day. The people he lives
3 with would be responsible and then at night time, his curfew
4 would be for work and if he had to pick up other things. The
5 curfew would be adjusted so he can go to work and depending on
6 the hours placed for the curfew, if he had extra hours he would
7 be able to but unfortunately, if his curfew is during the day,
8 he wouldn't be allowed out during the day to do those --
9 THE COURT: Okay, so he has got to work it into the
10 period, if he has got 10 hours he has got to work the errands
11 into the 10 hours, I guess.
12 MS. GAFFEY: When you say work the errands, oh, into
13 the hours that he is out.
14 THE COURT: That he's permitted to be out.
15 MS. GAFFEY: All right.
16 THE COURT: What I'll suggest, although I'm not
17 issuing an order on this, is depending on his overnight shift
18 certain things may not be doable during those hours so I'll ask
19 pretrial to consider that. For example if he had to go, I
20 don't know, something that's only open between you know ten
21 a.m. and two p.m., there's going to be an issue that pretrial
22 should account for. We'll just leave it out.
23 MS. GAFFEY: And just so the Court knows, I don't,
24 this isn't something that I want to micro manage but you know
25 in the past, I found that these things matter for people who

1  are out on bail release if they can still do things for
2  themselves and sometimes they're putting everything on the
3  person that they're living with or sometimes even the person
4  they're not living with is a burden so I would like to address
5  these upfront so that --

6  THE COURT: Okay. Which you've done or you want to
7  address?

8  MS. GAFFEY: No, thank you.

9  THE COURT: No, I think my request to pretrial is
10 understood. I'll be very candid here. I'm going to
11 essentially so order which has already been ordered by the
12 Georgia count. Mr. Polidore, I want to be crystal clear with
13 you. If you had shown up here in the first instance, I think
14 you would have been treated more strictly than you are in
15 Georgia. So I need to hear from you that understand the terms
16 of this bond and you're going to abide by all the terms. Are
17 you going to do that?

18 MR. POLIDORE: Yes, sir.

19 THE COURT: Mr. Baguola, I am going to request that
20 if there are any violations of this, that it be brought to me
21 in the first instance. Ms. Gaffey, now you've heard it too
22 because given the nature of these charges, I am concerned. I
23 don't know that I can be any clearer about that, all right? So
24 I have, I guess we'll call a draft, I'll circulate it. Why
25 don't you both make sure that it's consistent with the addendum

1 to the pretrial order and then I'll sign it?

2 MR. BAGUOLA: Your Honor, the one additional thing I
3 would note is that pretrial has recommended a moderate,
4 unsecured bond cosigned by a financial aid responsible surety.

5 THE COURT: Okay.

6 MR. BAGUOLA: I don't know that that was a condition
7 of the bond that was executed in Georgia.

8 THE COURT: It was, I think, wasn't it? Was there a
9 $10,000 bond or no?

10 MS. GAFFEY: It was unsecured and no surety if I
11 recall.

12 THE COURT: Does your client have a surety?

13 MS. GAFFEY: I haven't asked about a surety because
14 there was no --

15 THE COURT: Okay.

16 MS. GAFFEY: -- no reason to ask about surety.

17 THE COURT: Why don't you ask now? If you need to
18 step out, you can. Ms. Gaffey?

19 MS. GAFFEY: Yes, Your Honor, we do have a willing
20 suretor in the Court, Ms. Lauren Brooks (phonetic).

21 THE COURT: Okay. Is she here?

22 MS. GAFFEY: Yes, she is. Should I ask --

23 THE COURT: Ms. Brooks, can you come forward? Ms.
24 Brooks, my name is Judge Locke.

25 MS. BROOKS: Hi.

| | |
|---|---|
| 1 | THE COURT: Hello. I'm presiding over today's bail |
| 2 | proceedings. You've been present for the whole -- |
| 3 | MS. BROOKS: Yes. |
| 4 | THE COURT: -- proceeding? Okay. What is your |
| 5 | relationship to the defendant? |
| 6 | MS. BROOKS: I'm his girlfriend. |
| 7 | THE COURT: Could you pull the mic a little closer? |
| 8 | MS. BROOKS: Okay. I'm his girlfriend. |
| 9 | THE COURT: How frequently do you see him? |
| 10 | MS. BROOKS: Every day. |
| 11 | THE COURT: Do you live together? |
| 12 | MS. BROOKS: Yes. |
| 13 | THE COURT: Okay. What's being considered today is |
| 14 | whether your boyfriend should be released on bail or held in |
| 15 | jail while these charges work their way through the Courts. In |
| 16 | order for him to be bailed, he's going to have to abide by a |
| 17 | number of restrictions on his conduct. You heard talk about a |
| 18 | curfew and there are other restrictions containing something |
| 19 | called a bond. If he violates, well, the request to you is you |
| 20 | act as something called a suretor. In other words the bond |
| 21 | will be for $10,000 unsecured. If he were to violate any of |
| 22 | the restrictions placed upon his conduct, he would be |
| 23 | responsible for those $10,000 and if you agree to be a suretor, |
| 24 | you could also be responsible. |
| 25 | MS. BROOKS: I understand. |

1  THE COURT: Hello. I'm presiding over today's bail
2  proceedings. You've been present for the whole --
3  MS. BROOKS: Yes.
4  THE COURT: -- proceeding? Okay. What is your
5  relationship to the defendant?
6  MS. BROOKS: I'm his girlfriend.
7  THE COURT: Could you pull the mic a little closer?
8  MS. BROOKS: Okay. I'm his girlfriend.
9  THE COURT: How frequently do you see him?
10 MS. BROOKS: Every day.
11 THE COURT: Do you live together?
12 MS. BROOKS: Yes.
13 THE COURT: Okay. What's being considered today is
14 whether your boyfriend should be released on bail or held in
15 jail while these charges work their way through the Courts. In
16 order for him to be bailed, he's going to have to abide by a
17 number of restrictions on his conduct. You heard talk about a
18 curfew and there are other restrictions containing something
19 called a bond. If he violates, well, the request to you is you
20 act as something called a suretor. In other words the bond
21 will be for $10,000 unsecured. If he were to violate any of
22 the restrictions placed upon his conduct, he would be
23 responsible for those $10,000 and if you agree to be a suretor,
24 you could also be responsible.
25 MS. BROOKS: I understand.

1  THE COURT: Okay. I also want to make clear this is
2 entirely voluntary. If during our conversation you say, you
3 know what, Judge, I've thought about. I don't have the means.
4 I'm not comfortable, for whatever reason, which you do not have
5 to explain, you're absolutely free to leave and no one will
6 follow you.
7  MS. BROOKS: Okay.
8  THE COURT: Okay. So do you understand that this is
9 voluntary?
10  MS. BROOKS: I do understand.
11  THE COURT: Okay. Given that, and have you had a
12 chance to review the restrictions with Ms. Gaffey?
13  MS. BROOKS: (no audible response)
14  THE COURT: Ms. Gaffey, why don't you just walk
15 through those for a couple minutes. You can turn off the mic.
16  MS. GAFFEY: All right, thank you, Judge.
17  THE COURT: All right. Ms. Brooks, did Ms. Gaffey
18 explain to you the terms of the bond and the various
19 restrictions?
20  MS. BROOKS: Yes, I understand.
21  THE COURT: Okay. And you're still willing to be a
22 surety?
23  MS. BROOKS: Yes.
24  THE COURT: Do you work?
25  MS. BROOKS: Yes.

1     THE COURT: And what do you do?
2     MS. BROOKS: I actually work at the same bakery he
3 works at, I'm a production clerk.
4     THE COURT: Okay. And approximately how much money
5 do you make a year?
6     MS. BROOKS: About 38,000 a year.
7     THE COURT: Okay. We're going, the bond will be for
8 $10,000. I'm going to ask you, Ms. Gaffey, do you have the
9 bond? Can you ask, show her where to sign basically. Okay,
10 while that's going on, Mr. Baguola, I'm directing the
11 prosecution to comply with its obligation under <u>Brady versus</u>
12 <u>Maryland</u> and its progeny, to disclose to the defense all
13 information whether admissible or not, that is favorable to the
14 defendant, material either to guilt or to punishment and known
15 to the prosecution. Possible consequences for noncompliance
16 may include dismissal of individual charges or the entire case,
17 exclusion of evidence, professional discipline or court
18 sanctions on the attorneys responsible.
19     I'll be entering an order more fully describing this
20 obligation and the possible consequences of failing to meet it.
21 I direct the prosecution to review and comply with that order.
22 Do you confirm that the prosecution understand its obligation
23 and will fulfill them?
24     MR. BAGUOLA: Yes, Your Honor, we will.
25     THE COURT: Okay. Do we have the bond?

1     MS. GAFFEY: Yes, we have the bond, should I have Mr.
2  Polidore --
3     THE COURT: Yes. Mr. Polidore, take a look at the
4  bond. You reviewed it with your attorney, right? Say it into
5  the microphone.
6     MR. POLIDORE: Yes.
7     THE COURT: Okay.
8     MS. GAFFEY: Just one thing, I know on the bond
9  there's no contact with any co-defendants or co-conspirators.
10 We know who is an alleged co-defendant and co-conspirator from
11 the indictment. Other than that, the Government would have to
12 let us know so.
13    THE COURT: Is there anybody else you want to add,
14 Mr. Baguola?
15    MR. BAGUOLA: Not at this time, Your Honor.
16    THE COURT: Okay.
17    MR. BAGUOLA: Not at this time, Your Honor, --
18    THE COURT: Okay. I suspect --
19    MS. GAFFEY: So I will hand that back up.
20    THE COURT: All right, I'm signing the order now.
21 There's also I think an application for waiver of speedy trial,
22 is that correct?
23    MS. GAFFEY: That is correct.
24    THE COURT: Mr. Baguola, why do we need more time?
25    MR. BAGUOLA: Your Honor, Ms. Gaffey has just been

appointed to this case today. The parties could use some time, both for the Government to produce initial Rule 16 discovery and for Ms. Gaffey and I to discuss the possibility resolving some or all of this case without the need for a trial. So under those circumstances, I would submit that it serves the ends of justice for us to have this time excluded from the speedy trial computation.

THE COURT: Ms. Gaffey, you join the application?

MS. GAFFEY: I do.

THE COURT: Have you explained to your client his right to a speedy trial?

MS. GAFFEY: I did.

THE COURT: Do you believe he understands those rights?

MS. GAFFEY: I do.

THE COURT: Is he now agreeing to voluntarily waive those rights from today, September 28th, 2022 until November 18, 2022?

MS. GAFFEY: He does.

THE COURT: Mr. Polidore, do you understand that under the applicable statute the Government has a period of 70 days from indictment in which to bring this matter to trial or otherwise dispose of this case?

MR. POLIDORE: Yes.

THE COURT: Today, all sides, meaning the attorney

1 through the Government and you through your counsel are making
2 an application to extend that period of time by a little under
3 two months, meaning that the period of time from today,
4 September 28, 2022 until November 18, 2022 will not count
5 against those 70 days.  Do you understand?
6     MR. POLIDORE:  Yes.
7     THE COURT:  Have you had a chance to speak with your
8 lawyer about this?
9     MR. POLIDORE:  Yes.
10     THE COURT:  Are you now agreeing to this extension of
11 time?
12     MR. POLIDORE:  Yes.
13     THE COURT:  And you signed a writing to this effect,
14 is that correct?
15     MR. POLIDORE:  Yes.
16     THE COURT:  I'm holding a document that's one page
17 entitled waiver of speedy trial.  It appears to bear your
18 signature at the bottom.  Is that your signature, sir?
19     MR. POLIDORE:  Yes, sir.
20     THE COURT:  Mr. Polidore, has anyone threatened you
21 or coerced you in any way in order to get you to agree to the
22 extension of time?
23     MR. POLIDORE:  No.
24     THE COURT:  All right.  I find that the continuance
25 of time serves the interest of justice and that this interest

1 outweighs any other interest in denying the application and so
2 I'm signing the order now.  Is there anything else from the
3 Government?
4     MR. BAGUOLA:  No, Your Honor, thank you.
5     THE COURT:  Ms. Gaffey, anything from the defense?
6     MS. GAFFEY:  No, Your Honor, thank you.
7     THE COURT:  Thank you all.  We are concluded.
8     \* \* \* \* \*

## **C E R T I F I C A T I O N**

10     I, **TRACY GRIBBEN**, court approved transcriber, certify
11 that the foregoing is a correct transcript from the official
12 electronic sound recording of the proceedings in the above-
13 entitled matter.

15 /S/ TRACY GRIBBEN
16 TRACY GRIBBEN TRANSCRIPTION, LLC    DATE: November 9, 2022