**FILED**
**CLERK**

11/2/2023 12:11 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
-----------------------------X
                             :
UNITED STATES OF AMERICA,     :
                             :    22-CR-347 (JMA)(SIL)
          v.                 :
                             :    September 29, 2023
PATRICK POLIDORE,             :
                             :    Central Islip, NY
          Defendant.         :
                             :
-----------------------------X
```


TRANSCRIPT OF CRIMINAL CAUSE FOR GUILTY PLEA
BEFORE THE HONORABLE JAMES M. WICKS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          BREON PEACE, ESQ.
                             U.S. ATTORNEY
                             BY: ANTHONY BAGNUOLA, ESQ.
                             ASSISTANT U.S. ATTORNEY
                             271 Cadman Plaza East
                             Brooklyn, New York  11201


For the Defendant:           TRACEY GAFFEY, ESQ.
                             Federal Defenders of New York
                             770 Federal Plaza
                             Central Islip, NY 11722




Court Transcriber:           ARIA SERVICES, INC.
                             c/o Elizabeth Barron
                             274 Hovey Road
                             Milo, ME 04463
                             Aria@leinen.net



Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE CLERK:  Calling case 22-CR-347, United

2    States of America v. Patrick Polidore.

3          Counsel, please state your appearances for

4    the record.

5          MR. BAGNUOLA:  Good afternoon, your Honor.

6    Anthony Bagnuola for the government.

7          THE COURT:  Good afternoon, Mr. Bagnuola.

8    You can remain seated.

9          MS. GAFFEY:  Good afternoon, your Honor.

10   Tracey Gaffey, Federal Defenders, for Patrick Polidore,

11   who is also present in court this afternoon.

12         THE COURT:  Good afternoon, Ms. Gaffey.

13         Good afternoon, Mr. Polidore.

14         THE DEFENDANT:  Good afternoon.

15         THE COURT:  Ms. Gaffey, I'm advised that Mr.

16   Polidore does wish to plead guilty to Count 1 of the

17   indictment that's been filed against him.  Is that

18   correct?

19         MS. GAFFEY:  It is but he is pleading guilty

20   to Count 4.

21         THE COURT:  Hold on.  Count 4, I'm sorry,

22   Count 4.  One count, which is Count 4.

23         MS. GAFFEY:  Yes, your Honor.

24         THE COURT:  Okay, great, thank you for the

25   clarification.

1          Mr. Polidore, your counsel advises me that

2    you intend to withdraw your plea of not guilty and

3    instead plead guilty to Count 4 of the indictment

4    that's been filed against you.  This is a serious

5    decision so I want to -- I have to make sure that you

6    understand all of your rights and the consequences of

7    your plea, so I'm going to have to ask you questions,

8    all right?  These questions are going to require that

9    your answers be made under oath, so my courtroom deputy

10   Doreen will now swear you in if you wouldn't mind

11   standing and raising your right hand.

12          (Defendant is sworn.)

13          THE COURT:  Okay, you may be seated, thank

14   you.  So now you've been sworn to tell the truth, you

15   have to tell the truth.  If you were to deliberately

16   lie in response to any of my questions, you could face

17   further consequences and criminal charges for perjury

18   or making false statements.  That means if you do make

19   a false statement to the questions I pose, the

20   government could use those statements and prosecute you

21   for perjury or making a false statement.

22          Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Okay.  And if there's anything

25   that I say in this proceeding today that you don't

understand or if you need me to repeat something, or if
you need a break to speak with Ms. Gaffey at any time,
just ask, all right?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  It's important that you
understand everything that goes on in this proceeding
today.  Understood?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  First off, you do have
the right to have your guilty plea heard by the
district judge who is going to sentence you, and that
in this case is Judge Azrack.  Instead of having her
handle the plea today, you can waive that right and
have me as a magistrate judge handle it.  A transcript
of what transpires today will be made and given to
Judge Azrack, and then she will review that as well.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Have you had the opportunity to
speak with Ms. Gaffey about waiving the right to have
Judge Azrack hear the plea of guilty and instead having
me do it?

THE DEFENDANT:  Yes, I have.

THE COURT:  Do you wish to give up that
right to have Judge Azrack hear your plea and instead

1  proceed before me?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And you make this decision

4  voluntarily and of your own free will?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Has anyone made any promises to

7  you or threatened you in any way to induce you to have

8  the plea heard by me?

9          THE DEFENDANT:  No.

10         THE COURT:  I have a proposed order of

11 referral and consent, and it looks like you've signed

12 both the order of referral and consent, two forms.

13         Is this your signature?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  All right.  And you signed them

16 today, Mr. Polidore?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Is that after you spoke with Ms.

19 Gaffey about waiving and the consequences of waiving

20 the right to have Judge Azrack hear the plea?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Okay, I'm going to so order

23 those then.

24         Before I accept your plea, there are

25 questions that I have to ask you to assure myself that

the plea is valid.  Again, if you don't understand any of the questions, please say so.  It's important that you understand each of the questions.  The first one is easy.

What's your full name?

THE DEFENDANT:  Patrick Polidore, Junior.

THE COURT:  And how old are you, Mr. Polidore?

THE DEFENDANT:  32.

THE COURT:  And how far did you go in school?

THE DEFENDANT:  High school.

THE COURT:  Okay.  Did you finish high school?

THE DEFENDANT:  No.

THE COURT:  How far in high school?

THE DEFENDANT:  Eleventh grade.

THE COURT:  All right.  Have you had any problems or difficulties communicating with Ms. Gaffey?

THE DEFENDANT:  No.

THE COURT:  Have you been recently under the care of a doctor or psychiatrist for any reason?

THE DEFENDANT:  Due to my probation stipulations, I had to go to therapy.

THE COURT:  Okay, that's all right.  Are you

1   taking any medications?

2              THE DEFENDANT:  No.

3              THE COURT:  Any alcohol to drink in the last

4   24 hours?

5              THE DEFENDANT:  No.

6              THE COURT:  Any drugs in the last 24 hours?

7              THE DEFENDANT:  No.

8              THE COURT:  Including marijuana?

9              THE DEFENDANT:  No.

10             THE COURT:  Is your mind clear today?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Do you understand what we're

13  doing here today?

14             THE DEFENDANT:  Yes.

15             THE COURT:  All right.  You do, Mr.

16  Polidore, as a defendant in a criminal case have the

17  right to be represented by counsel at every stage of

18  your criminal case, including this one, from the time

19  you're arrested right through appeal.  And if you can't

20  afford one at any time along that process, the Court

21  will appoint one to represent you.

22             Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  You also have the right to hire

25  your own attorney if you so choose.

1                Do you understand that?

2                THE DEFENDANT:  Yes.

3                THE COURT:  Ms. Gaffey has been your

4   attorney, correct?

5                THE DEFENDANT:  Yes.

6                THE COURT:  Have you had sufficient time to

7   speak with Ms. Gaffey about today's proceedings and

8   what we're doing today?

9                THE DEFENDANT:  Yes.

10                THE COURT:  In particular, have you had

11   enough time to speak with her about your decision to

12   enter a guilty plea in this case?

13                THE DEFENDANT:  Yes.

14                THE COURT:  If you need to speak with her as

15   we proceed today, just ask me and we can take a break,

16   all right?

17                THE DEFENDANT:  Okay.

18                THE COURT:  Otherwise, we're going to

19   continue to proceed.  You're satisfied with the

20   assistance that she's given you so far?

21                THE DEFENDANT:  Yes.

22                THE COURT:  All right.  And you've reviewed

23   the indictment, I take it, in this case?

24                THE DEFENDANT:  Yes.

25                THE COURT:  And you've discussed the charges

1    in the indictment with Ms. Gaffey?

2            THE DEFENDANT:  Yes, I have.  Sorry, yes, I

3    have.

4            THE COURT:  That's all right.  If you want

5    some water, it's right in front of you, all right?

6    That's for you, all right?

7            THE DEFENDANT:  Okay.

8            THE COURT:  Ms. Gaffey, any difficult or

9    problems communicating with Mr. Polidore?

10           MS. GAFFEY:  No, your Honor.

11           THE COURT:  In your view, is he capable of

12   understanding the nature of the charge?

13           MS. GAFFEY:  Yes, he is.

14           THE COURT:  Have you discussed the charges

15   in the indictment and what it means to plead guilty?

16           MS. GAFFEY:  I have.

17           THE COURT:  Does he understand the rights

18   he's going to be giving up or waiving by pleading

19   guilty?

20           MS. GAFFEY:  He does.

21           THE COURT:  Any concern about his competence

22   to plead guilty here today?

23           MS. GAFFEY:  None.

24           THE COURT:  Have you advised him about the

25   maximum sentence and penalties that could be imposed?

1          MS. GAFFEY:  I have.

2          THE COURT:  And how the sentencing

3    guidelines and 3553 factors will work?

4          MS. GAFFEY:  I have.

5          THE COURT:  I see him shaking his head yes

6    as you say this so you must have.

7          As I understand it, you're seeking to plead

8    guilty to Count 4 today, which is charging a violation

9    of 18 USC 922(a)(6), making false statements to acquire

10   firearms.

11         Do you understand what you've been charged

12   with?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Okay.  Crimes are made up of

15   what we call elements, and elements are really like

16   separate ingredients that the government has to prove

17   at trial, and they have to prove these beyond a

18   reasonable doubt, each of the elements, in order for

19   someone to be convicted of that crime.  And if the

20   government is unable to prove any of these elements or

21   ingredients beyond a reasonable doubt, then a defendant

22   like yourself cannot be convicted of the crime charged.

23         Do you understand that?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Mr. Bagnuola, I know that you've

1  recited the elements I think in the standard plea form,

2  is that correct?

3          MR. BAGNUOLA:  Yes, your Honor.

4          THE COURT:  All right.  Would you mind

5  reciting them for the record, though, what the elements

6  are here so we can just go over those?

7          MR. BAGNUOLA:  Certainly.  That the

8  defendant purchased or attempted to purchase a firearm

9  from a licensed dealer.  That he made a statement to

10  that dealer in connection with the purchase.  In this

11  case, it's that he was the intended recipient of the

12  firearm being purchased.  That the statement was false

13  and Mr. Polidore made the statement knowing it was

14  false.  That the statement was material to the purchase

15  of the firearm.  Here, that's because the true intended

16  beneficiary was a prohibited person.  And finally, that

17  the false statement was intended to deceive the dealer.

18          THE COURT:  All right, thank you very much.

19          Ms. Gaffey, any disagreement as to the

20  elements as recited by Mr. Bagnuola?

21          MS. GAFFEY:  No, your Honor.

22          THE COURT:  Okay.  Mr. Polidore, you've

23  heard the elements that were just recited of the crime

24  to which or the charge to which you intend to plead

25  guilty?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  Did you have time to

3    discuss these elements with Ms. Gaffey today?

4          THE DEFENDANT:  Yes, I have.

5          THE COURT:  All right.  Any questions for me

6    about the elements or the charge?

7          THE DEFENDANT:  No.

8          THE COURT:  Okay.  So by pleading guilty to

9    the charge, this charge in particular, you'll be giving

10   up some very valuable rights, okay?  What I want to now

11   do is go over these rights that you have and the rights

12   that you're going to be giving up by pleading guilty.

13   First, you have the right to plead not guilty.

14          Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Which you have already and you

17   can persist in that.  What that really means is, even

18   if you are guilty, you have a choice.  It's up to you

19   to decide what to do, not Ms. Gaffey, not Mr. Bagnuola,

20   not me, not Judge Azrack.

21          Do you understand that?

22          THE DEFENDANT:  Yes, I do.

23          THE COURT:  You can withdraw -- you may

24   withdraw your previously entered plea of not guilty and

25   plead guilty, as apparently you wish to do today, or

1  you can simply go to trial by persisting in your plea

2  of not guilty.

3         Do you understand that?

4         THE DEFENDANT:  Yes, I do.

5         THE COURT:  The choice is yours.  If you

6  plead not guilty to the charges, you have the right

7  under the Constitution and the laws of the United

8  States to a speedy and fair and public trial before a

9  jury with the assistance of counsel, in this case Ms.

10 Gaffey, on the charges that are contained in the

11 indictment.

12        Do you understand that?

13        THE DEFENDANT:  Yes, I do.

14        THE COURT:  If the government fails to meet

15 the burden of proof that is beyond a reasonable doubt,

16 the jury would have to find you not guilty.  And any

17 verdict by the jury, whether guilty or not guilty,

18 would have to be unanimous, meaning that all 12 jurors

19 have to agree.

20        Do you understand that?

21        THE DEFENDANT:  Yes.

22        THE COURT:  All right.  And in the course of

23 the trial, witnesses for the government would have to

24 come into court and testify in your presence.  Ms.

25 Gaffey would have the right to cross-examine these

witnesses and object to evidence offered by the
government, and could offer evidence on your own
behalf.

DO you understand that?

THE DEFENDANT: Yes.

THE COURT: And she would also have the
right to compel witnesses to come to testify who may
not want to come to testify. She could ask the Court
to issue subpoenas to compel them here.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And at trial, you would even
have the right, not the obligation but the right to
testify on your own behalf if you wanted to. On the
other hand, you wouldn't be forced to testify if you
didn't want to. Under the Constitution and laws, no
one can be forced to testify and be a witness against
him or herself. So if you had a trial and you chose
not to testify, Judge Azrack in fact would instruct the
jury that they couldn't hold that against you.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If instead of going to trial,
you plead guilty to the crime charged and Judge Azrack
accepts your guilty plea on my recommendation, you'll

1  be giving up these constitutional rights that I just

2  described to a trial and all the other rights I just

3  described.

4          Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  There would be no trial in the

7  case.  The Court would simply enter a guilty --

8  judgment of guilt based upon your plea.

9          Do you understand that?

10         THE DEFENDANT:  Yes.

11         THE COURT:  And if you do plead guilty, I'm

12 going to have to ask you some questions about what you

13 did in order to satisfy myself and ultimately Judge

14 Azrack that in fact, you're  guilty of the crimes that

15 you're being charged with.  So you're going to have to

16 answer questions and acknowledge your guilt, all right?

17         THE DEFENDANT:  Yes.

18         THE COURT:  What does this mean?  It means

19 you're giving up your Fifth Amendment right not to

20 testify against yourself.

21         Do you understand that?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Also, if you enter a guilty plea

24 today and you admit to the criminal conduct alleged in

25 the charge and Judge Azrack accepts your plea on my

1　recommendation, you cannot appeal to a higher court on

2　whether in fact you committed the crime or not.　That

3　is over by your plea.

4　　　　　　Do you understand that?

5　　　　　　THE DEFENDANT:　Yes, I do.

6　　　　　　THE COURT:　Are you willing to give up your

7　right to a trial and all the other rights I've just

8　described?

9　　　　　　THE DEFENDANT:　Yes, I am.

10　　　　　　THE COURT:　Okay.　Any questions for me so

11　far?

12　　　　　　THE DEFENDANT:　No, sir.

13　　　　　　THE COURT:　All right.　I understand there

14　is a written cooperation agreement in this case, which

15　we will mark as Court Exhibit 1.

16　　　　　　Mr. Polidore, have you read and had an

17　opportunity to review with Ms. Gaffey the cooperation

18　agreement?

19　　　　　　THE DEFENDANT:　Yes.

20　　　　　　THE COURT:　And is it clear to you?

21　　　　　　THE DEFENDANT:　Yes, it is.

22　　　　　　THE COURT:　Do you understand all of the

23　terms?

24　　　　　　THE DEFENDANT:　Yes.

25　　　　　　THE COURT:　I would just like you -- if you

1 have a copy of it in front of you, just turn to the

2 last page, which is page 7.  I just want to confirm

3 that your signature appears on page 7.

4          THE DEFENDANT:  Yes.

5          THE COURT:  Is that what you signed?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Okay.  We have the original up

8 here but you have a copy in front of you?

9          THE DEFENDANT:  Yes, that's right.

10          THE COURT:  You signed that in front of Ms.

11 Gaffey here today?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And after you reviewed it with

14 her?

15          THE DEFENDANT:  Yes.

16          THE COURT:  And after you discussed it with

17 her?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Okay.  Does this agreement, in

20 your view, contain all of the promises made between the

21 government and you in exchange for your plea of guilty?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Has anyone made any other

24 promises to you in addition to what's in this

25 cooperation agreement?

1          THE DEFENDANT:  No.

2          THE COURT:  Okay.  Has anyone made any

3    promises to you about what your sentence would be?

4          THE DEFENDANT:  No.

5          THE COURT:  Okay.  Ms. Gaffey, you've

6    discussed this agreement with Mr. Polidore?

7          MS. GAFFEY:  I have, your Honor.

8          THE COURT:  Do you believe he understands

9    fully its terms and conditions?

10         MS. GAFFEY:  Yes, I do.

11         THE COURT:  And that's your signature as

12   well?

13         MS. GAFFEY:  Yes, it is.

14         THE COURT:  All right.  And he signed the

15   agreement in your presence?

16         MS. GAFFEY:  Yes, he did.

17         THE COURT:  In your view, does the agreement

18   contain all of the promises made between the government

19   and your client in exchange for his plea of guilty

20   today?

21         MS. GAFFEY:  Yes, it does.

22         THE COURT:  Mr. Bagnuola, that is your

23   signature on the agreement?

24         MR. BAGNUOLA:  Yes, your Honor, as well as

25   that of a supervising Assistant U.S. Attorney.

1          THE COURT:  Excellent.  And in your view, it

2    contains all of the promises made between the

3    government and Mr. Polidore in exchange for his plea of

4    guilty?

5          MR. BAGNUOLA:  It does.

6          THE COURT:  All right.  Mr. Polidore, I must

7    make sure that you understand the consequences now of

8    pleading guilty to Count 4 of the indictment.  As I

9    mentioned, Count 4, which charges a violation of Title

10   18 USC 922(a)(6) for making false statements to acquire

11   firearms, carries the following potential penalties:

12         A minimum term of imprisonment of zero

13   years, a maximum of ten years, maximum supervised

14   release three years to follow any term of imprisonment.

15   If a condition is release is violated, you could be

16   sentenced to up to two years without credit for

17   prerelease imprisonment or time previously served on

18   post-release supervision.  The maximum fine could be up

19   to $250,000, and a mandatory $100 special assessment.

20   In addition, under Title 18 USC 922(g), anyone who is

21   convicted of a felony is prohibited from possessing a

22   firearm, and any such possession constitutes a federal

23   crime punishable by a term of imprisonment of up to ten

24   years.

25         Do you understand the consequences of

1  pleading guilty which I've just described?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Okay.  And if you're a non-

4  citizen of the U.S. as well, a plea of guilty could

5  lead to deportation.

6              Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  All right.  As to sentencing

9  now, if you plead guilty, Judge Azrack will be the one

10  sentencing you, okay?  And I want to briefly review how

11  she's going to go about doing that.

12             Have you had the opportunity and chance to

13  speak with Ms. Gaffey about that, the process of

14  sentencing?

15             THE DEFENDANT:  Yes, I have.

16             THE COURT:  All right.  Ms. Gaffey, have you

17  had sufficient time to discuss it with Mr. Polidore?

18             MS. GAFFEY:  I have, your Honor.

19             THE COURT:  And how she will consider the

20  sentencing guidelines and the 3553 factors?

21             MS. GAFFEY:  Yes.

22             THE COURT:  And in your view, do you believe

23  that he understands the process that Judge Azrack will

24  undergo to arrive at the sentence?

25             MS. GAFFEY:  Yes, I do.

1          THE COURT:  All right.  Mr. Polidore, the

2    crime to which you're pleading guilty carries potential

3    consequences that I just described.  To determine what

4    your actual sentence will be, Judge Azrack has to

5    consider something called sentencing guidelines, and

6    they're just that.  They're a guide to help the Court

7    determine whether there should be a prison term and if

8    so, for how long, and also, the amount of fines and

9    whether supervised release should be imposed and if so,

10   for how long.  The guidelines are not mandatory but

11   Judge Azrack is required to at least consider them.

12          Do you understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Mr. Bagnuola, I think in the

15   cooperation agreement, you described what the estimate

16   of ranges are at this time?

17          MR. BAGNUOLA:  That is not contained in the

18   cooperation agreement, Judge.

19          THE COURT:  All right.  Do we have that in

20   the standard plea form?

21          MR. BAGNUOLA:  I don't believe that was one

22   of the questions called for in the plea form but I can

23   recite them on the record.

24          THE COURT:  If you would.

25          MR. BAGNUOLA:  Sure.

1          THE COURT:  This is just an estimate, Mr.

2     Polidore, of the range of sentence under the guidelines

3     as we sit here today.

4          MR. BAGNUOLA:  Assuming Mr. Polidore

5     receives a 3-point reduction for acceptance of

6     responsibility by virtue of his plea here today, the

7     government estimates a total offense level of 25.

8     Because Mr. Polidore has no known criminal history, we

9     expect he'll be in criminal history category 1, and

10    that would produce an advisory guidelines range of 57

11    to 71 months.

12         THE COURT:  Okay.  Thank you very much.

13         Ms. Gaffey, at this time, do you have any

14    disagreement with the government's estimate that you

15    would like to put on the record?

16         MS. GAFFEY:  No, your Honor.

17         THE COURT:  All right.  Mr. Polidore, I want

18    to emphasize that what the government just described is

19    just an estimate as we know today, based on what the

20    government knows today.  So even if you're sentenced to

21    something different from what Mr. Bagnuola just

22    estimated the sentencing guideline range to be, you

23    will not be allowed to withdraw this plea of guilty.

24         Do you understand that?

25         THE DEFENDANT:  Yes.

1           THE COURT:  All right.  The government's

2   estimate is also not binding on Judge Azrack, either.

3   Rather, she's going to do her own sentencing guideline

4   calculation, and that's the calculation that's going to

5   be used at sentencing.  The guidelines themselves,

6   though, sometimes allow the judge under certain

7   circumstances to depart upward or downward from the

8   advisory guideline range.

9           In addition, the law requires her to

10  consider another set of factors.  These include the

11  seriousness of the crime that was committed, your

12  history and background, the need for punishment and the

13  need to deter you and others from committing similar

14  crimes.  These are what we call 3553 factors.  After

15  taking all of these things into consideration, Judge

16  Azrack may sentence you to something higher or lower

17  than what's called for in the advisory sentencing

18  guidelines.

19          Do you understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  The important thing you need to

22  understand today is that until you're sentenced, no one

23  can tell you exactly what your sentence is going to be,

24  not your lawyer, not Mr. Bagnuola, or me.

25          Do you understand that?

1      THE DEFENDANT:  Yes.

2      THE COURT:  To help Judge Azrack calculate

3 the applicable sentence in your case and evaluate the

4 3553 factors, she's going to get a presentence report

5 from the Probation Department, okay?  The report is

6 going to be all about you and your history and your

7 background, the charges, and any other relevant

8 matters.  The Probation Department does its own

9 guideline calculation that they provide in this

10 presentence report, and they will recommend a sentence

11 that they believe is appropriate.  So you will get a

12 copy of this along with Ms. Gaffey and the government,

13 and everybody will have an opportunity to review and

14 see the report and challenge it in any way.

15      Do you understand that?

16      THE DEFENDANT:  Yes.

17      THE COURT:  And then Judge Azrack will hold

18 something called a sentencing hearing.  At that

19 hearing, Ms. Gaffey and Mr. Bagnuola can present

20 arguments, witnesses, evidence on any sentencing issue.

21 You could bring family, you can bring friends to

22 support you in court.  You'll also have a chance to

23 tell Judge Azrack directly what you want to say before

24 she imposes sentence.

25      Do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  So she's going to

3   use the presentence report that she gets and all of the

4   information that she receives at this sentencing

5   hearing so that she can calculate and consider what she

6   thinks should be the appropriate and applicable

7   guideline range after weighing these 3553 factors, and

8   then she will determine your sentence.

9          Do you understand that?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Any questions from me about

12  sentencing?

13         THE DEFENDANT:  No.

14         THE COURT:  All right.  So under certain

15  circumstances, you or the government may have the right

16  to appeal any sentence that's imposed on you.  You

17  could also appeal -- you may also have the right to

18  appeal the conviction if you believe that your guilty

19  plea here today was somehow unlawful or involuntary, or

20  there was some fundamental defect in the proceedings

21  today.

22         Do you understand that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  In the cooperation agreement

25  that you signed, though, with the government, you've

agreed that you will not file an appeal or otherwise

challenge your conviction or your sentence, so long as

the Court imposes a term of imprisonment of 78 months

or less.  So you've also agreed to waive on appeal that

the statute that you intend to plead guilty to is

unconstitutional and that the conduct that you're going

to admit to does not fall within the scope of that

statute.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Has anyone forced you or

threatened you or made promises to you in order to

induce you to waive your rights to appeal?

THE DEFENDANT:  No.

THE COURT:  All right.  Questions for me

about your right to appeal and what you're waiving?

THE DEFENDANT:  No.

THE COURT:  All right.  Now, before we

proceed, are there any questions about anything we've

covered so far about the charge, your rights, or

anything we've talked about so far that you have --

that might not be clear to you?

THE DEFENDANT:  No questions.

THE COURT:  All right.  Are you ready to

plead to Count 4 of the indictment?

1            THE DEFENDANT:  Yes, I am.

2            THE COURT:  All right.  Ms. Gaffey, any

3    reason that you think Mr. Polidore should not enter a

4    plea of guilty here today to this charge?

5            MS. GAFFEY:  No, your Honor.

6            THE COURT:  Are you aware of any viable

7    legal defense to the charge in Count 4?

8            MS. GAFFEY:  No, your Honor.

9            THE COURT:  All right.  Mr. Polidore, how do

10   you plead to Count 4 of the indictment, guilty or not

11   guilty?

12           THE DEFENDANT:  I plead guilty.

13           THE COURT:  All right.  And are you making

14   this plea of guilty voluntarily and of your own free

15   will?

16           THE DEFENDANT:  Yes, I am.

17           THE COURT:  Anyone threatened you or forced

18   you or pressured you in any way to plead guilty?

19           THE DEFENDANT:  No.

20           THE COURT:  Other than the cooperation

21   agreement, any other promises made to you to induce you

22   to plead guilty?

23           THE DEFENDANT:  No.

24           THE COURT:  Okay.  And has anyone promised

25   what the sentence would be if you plead guilty?

```
1                    THE DEFENDANT:  No.

2                    THE COURT:  All right.  I'm going to need

3    you at this point to tell me in your own words what you

4    did in connection with Count 4 in the indictment.

5                    MS. GAFFEY:  May we just have one moment,

6    your Honor?

7                    THE COURT:  Of course.  You can take as much

8    as you need.

9                    (Ms. Gaffey is conferring with the

10   defendant.)

11                   THE COURT:  Are you ready to proceed?

12                   MS. GAFFEY:  Yes, your Honor.

13                   THE COURT:  All right.

14                   THE DEFENDANT:  On November 4th, I purchased

15   firearms under false pretense and knowingly, I did this

16   to sell them.

17                   (Ms. Gaffey is conferring with the

18   defendant.)

19                   THE DEFENDANT:  Okay.  In order --

20                   THE COURT:  Take your time, take your time.

21                   THE DEFENDANT:  I'm sorry, I'm nervous.  On

22   November 4th, I made a false statement to a firearms

23   dealer in order to purchase a firearm.  I intended to

24   -- sorry.

25                   THE COURT:  That's okay.
```

1              THE DEFENDANT:  I intended to deceive the

2     dealer in order to get -- in order to get the firearm.

3     This took place in the Northern District of Georgia.

4              THE COURT:  Okay.  And you knew that the

5     statement that you made to the dealer was not true, was

6     false?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Okay.  And it was your intention

9     to deceive.

10             THE DEFENDANT:  Yes.

11             THE COURT:  Now, I see you were reading

12    something.  Is that something that was prepared by you

13    and your lawyer?

14             THE DEFENDANT:  Yes.

15             THE COURT:  All right.  And is there a

16    reason you needed to read it?  Does it help you to

17    describe the events?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Okay.  And is that accurate,

20    what was written?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Okay.  Mr. Bagnuola, anything

23    else in terms of the allocution?

24             MR. BAGNUOLA:  Your Honor, I would just like

25    to clarify that November 4th was in 2020 as alleged in

1   the indictment.  And as Mr. Polidore correctly noted,

2   the charge is venued in the Northern District of

3   Georgia.  My understanding is that Mr. Polidore is

4   prepared today to waive indictment in the Northern

5   District of Georgia and accept the Court's jurisdiction

6   here in the Eastern District of New York.

7         MS. GAFFEY:  Yes, your Honor, and I'll add

8   that Count 1 of the indictment, the conspiracy count

9   that Mr. Polidore is not pleading guilty to, is

10   properly venued in the Eastern District of New York.

11   And as this is a negotiated plea to Count 4 --

12         THE COURT:  Yeah.

13         MS. GAFFEY:  -- we are waiving venue in the

14   Northern District of Virginia -- excuse me, Georgia.

15         THE COURT:  Okay.  Let's start with the year

16   that it occurred.  You recited a date.  Let's just get

17   confirmation of the year.

18         THE DEFENDANT:  2020.

19         THE COURT:  2020?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Okay, very well.  And you heard

22   the discussion about the venue.  That is, you're here

23   in stead of the Northern District of Georgia.

24         Do you understand that?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Okay.  And did you have

2    sufficient time to speak with Ms. Gaffey about the

3    venue of this case in terms of pleading guilty here as

4    opposed to the Northern District of Georgia?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Did anybody pressure you or

7    promise you anything to plead guilty here as opposed to

8    in the Northern District of Georgia?

9          THE DEFENDANT:  No.

10          THE COURT:  All right.  Do you need any more

11   time to speak with Ms. Gaffey about that?

12          THE DEFENDANT:  No.

13          THE COURT:  Okay.  And it's your decision to

14   have the plea taken here in the Eastern District of New

15   York?

16          THE DEFENDANT:  Yes.

17          THE COURT:  All right.  And this decision is

18   made voluntarily and of your own free will?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Okay, very well.

21          Anything else on the allocution, Mr.

22   Bagnuola?

23          MR. BAGNUOLA:  No, your Honor, thank you.

24          THE COURT:  All right.  I would like to hear

25   the government outline its proof as to Count 4 in the

1  indictment.

2         MR. BAGNUOLA:  Yes, your Honor.  If the case

3  had gone to trial, among other things, the government

4  would have offered ATF forms 4473.  Those are federal

5  records documenting firearms transactions completed by

6  Mr. Polidore in the course of purchasing six firearms

7  from licensed dealers in Douglasville, Hiram, and

8  Kennesaw, Georgia on November 4th, 2020, in which he

9  made statements concerning the intended recipient of

10  those firearms.

11         We would introduce electronic communications

12  between Mr. Polidore and his codefendant demonstrating

13  among other things that the codefendant was the true

14  intended recipient of the firearms and that the

15  defendant knew that to be the case.  We would offer a

16  certificate of disposition reflecting his codefendant's

17  prior felony conviction and as such, his status as a

18  person prohibited from possessing a firearm, and

19  testimony from the firearms dealers that the

20  defendant's statements were material in so far as they

21  would not have sold him those firearms if they had

22  known the guns were intended for a convicted felon.

23         THE COURT:  Okay, thank you very much.

24         Based upon the information provided to me

25  here today, I do find that you, Mr. Polidore, are fully

competent and capable of entering a plea -- an informed

plea of guilty. I also find that you're acting

voluntarily and that you fully understand the charge,

your rights, and the consequences of your guilty plea.

I also find that there's a factual basis for the plea

of guilty. So I will recommend to the Honorable Joan

Azrack that your plea of guilty to the charge 4 in the

indictment by accepted by her.

So the next step for you, Mr. Polidore, is

that you will meet with someone from the Probation

Department to prepare that presentence report that I

mentioned before, and I do urge that you cooperate with

them, as I know you will, obviously with the advise of

your good lawyer, Ms. Gaffey, and you have to be

truthful and forthcoming with them.

Okay. The government's position on release

or detention?

MR. BAGNUOLA: We would move to continue the

current conditions of release, Judge.

THE COURT: Okay. Ms. Gaffey, of course you

agree.

MS. GAFFEY: Yes, I do.

THE COURT: All right. The same conditions

will continue then. Thank you very much. The next

date before Judge Azrack -- the sentencing date right

1  now is scheduled for January 9th, 2024 at 11:00 in her

2  courtroom, 920.

3          Anything else, Mr. Bagnuola?

4          MR. BAGNUOLA:  No, your Honor, thank you.

5          THE COURT:  Okay.  Ms. Gaffey?

6          MS. GAFFEY:  No, your Honor, thank you very

7  much.

8          THE COURT:  Okay, take care, everybody.

9          Mr. Polidore, you take care.

10          THE DEFENDANT:  Thank you.  You, too.

11          THE COURT:  Thank you.

12                  *  *  *  *  *  *  *

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18      I certify that the foregoing is a correct

19   transcript from the electronic sound recording of the

20   proceedings in the above-entitled matter.

21

22

23

24

25   ELIZABETH BARRON                    November 2, 2023